IN THE UNITED STATES COURT OF APPEALS
ELEVENTH CIRCUIT

---

USCA Case No. 22-11520-JJ

United States District Court, Southern District of Florida

Case No.:  9:20-CV-82357-RS

---

NOBLE PRESTIGE LIMITED,

Petitioner/Appellees,

v.

PAUL HORN, Individually, CRAIG THOMAS GALLE, Individually and as Conservator for PAUL CLAYTON HORN, and GALLE LAW GROUP, P.A.,

Respondents and/or Appellants.

---

## PRINCIPAL BRIEF OF RESPONDENTS/APPELLANTS CRAIG THOMAS GALLE, INDIVIDUALLY AND AS CONSERVATOR FOR PAUL HORN, AND THE GALLE LAW GROUP, P.A.

---

JAMES M. MCCANN (182545)
CHRISTINE B. GARDNER (109903)
**AKERMAN LLP**
777 S. Flagler Street, 1100 West Tower
West Palm Beach, Florida 33401
Telephone:  (561) 653-5000
jim.mccann@akerman.com
christine.gardner@akerman.com

*Attorneys for Respondents/Appellants Craig Thomas Galle,
Individually and as Conservator for Paul Horn, and The Galle Law Group, P.A.*

USCA Case No. 22-11520-JJ

*Noble Prestige Limited v. Paul Horn, et al.*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE PURSUANT TO FRAP 26.1 AND 11TH CIR. R. 26.1-1

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-2, Appellants Craig Thomas Galle, individually and as Conservator for Paul Horn, and The Galle Law Group, P.A., by and through their undersigned counsel, hereby disclose the following trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held corporation that owns 10% or more of the party's stock. There are no known stock ticker symbols or publicly traded entities among these parties.

1. Akerman LLP (Counsel for Appellants)

2. Adkinson, George (Director of Appellee)

3. Adkinson, Ricky James (Director of Appellee)

4. Boase Cohen & Collins (Arbitration Counsel)

5. Britt, James W. (Guardian Ad Litem for Paul Horn)

6. Cohen, Colin (Arbitration Counsel)

7. Crompton, Jonathan (Arbitration Counsel)

8. Denton, Gavin (Arbitrator)

USCA Case No. 22-11520-JJ

*Noble Prestige Limited v. Paul Horn, et al.*

9.  Galle, Craig Thomas, individually and as conservator for Paul Horn (Appellant)

10. Gardner, Christine B. (Counsel for Appellants)

11. Hinshaw & Culbertson LLP (Counsel for Appellee)

12. Horn, Paul (Respondent)

13. Jurman, Rory E. (Counsel for Appellee)

14. La Chuisa, Jenelle E. (Counsel for Appellee)

15. Lee, Yuen Chuen (Arbitrator)

16. Lenci, Edward K. (Counsel for Appellee)

17. Lieth, Hon. Elizabeth D. (Denver Probate Court Judge)

18. Luk, Bernard (Counsel for Appellee)

19. McCann, M. James (Counsel for Appellants)

20. Noble Prestige Limited (Appellee)

21. Powell, Simon (Arbitrator)

22. Reynolds Porter Chamberlain (Arbitration Counsel)

23. Smith, Hon. Rodney (U.S. District Judge, Southern District of Florida)

24. The Galle Law Group, P.A. (Appellant)

25. Wyman, James H. (Counsel for Appellee)

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Eleventh Circuit Rules 28-1(c) and 34-3(c), Appellants Craig Thomas Galle, individually and as Conservator for Paul Horn, and The Galle Law Group, P.A. ("GLG") request oral argument. The issues in this appeal include whether the District Court erred as a matter of law in granting Appellee Noble Prestige Limited preliminary injunctive relief as to $10 million held in probate court conservatorship accounts, where the District Court did so (1) under Federal Rule of Civil Procedure 65 instead of Rule 64; (2) without requiring a bond; (3) based solely on preventing dissipation of assets; (4) despite multiple abstention doctrines requiring abstention in the face of the probate court's competing jurisdiction over the funds; (5) despite the fact that neither of the enjoined parties—GLG and Galle individually—hold any of the funds, and (6) despite acknowledging that Galle and GLG were not parties to any written arbitration agreement in any capacity, thereby depriving the District Court of subject matter jurisdiction over him as a matter of law. Appellants believe oral argument will assist this Court in clarifying and deciding the issues on appeal.

## **TABLE OF CONTENTS**

**CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE**................................................................................................C-1

**STATEMENT REGARDING ORAL ARGUMENT** .......................................... i

**TABLE OF CONTENTS** ................................................................................ ii

**TABLE OF CITATIONS** ............................................................................... iv

**STATEMENT OF JURISDICTION**..............................................................1

**STATEMENT OF THE ISSUES**...................................................................3

**STATEMENT OF THE CASE** ......................................................................5

*Nature Of The Case* ...................................................................................... 5

*Statement of the Facts and Course of Proceedings Below* ...................... 7

    A. Factual Background.................................................................................7

    B. The Litigation .........................................................................................9

*Standard Of Review* ................................................................................... 12

**SUMMARY OF THE ARGUMENT** ...................................................14

**ARGUMENT** ..........................................................................................17

   I.  **THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AS IT APPLIED THE WRONG PROCEDURAL AND LEGAL STANDARD** ... 17

    A.  *The District Court improperly granted relief under Federal Rule of Civil Procedure 65 instead of evaluating the proposed relief under Rule 64.* .........17

    B.  *The District Court erred in granted preliminary injunctive relief as to $10 million dollars without requiring, or even considering, the setting of any bond.* ...................................................................................................................28

**II.  THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AGAINST APPELLANTS, IN THE FORM OF A TEMPORARY RESTRAINING ORDER, BECAUSE ITS SOLE REASONING—DISSIPATION OF FUNDS—IS FACIALLY INSUFFICIENT.**............................................................ 30

**III.  THE DISTRICT COURT ERRED IN NOT ABSTAINING FROM EXERCISING JURISDICTION OVER FUNDS HELD UNDER THE CONTROL AND SUPERVISION OF THE DENVER PROBATE COURT.** ................................................................................ 33

  A.  *The District Court's exercise of jurisdiction is in conflict with the Denver Probate Court's ongoing jurisdiction over Conservatorship assets.* ...............33

  B.  *The District Court's exercise of jurisdiction conflicts with the Denver Probate Court's in rem control and supervision of the Conservator Estate assets.* ................................................................................41

  C.  *This Court may determine its own jurisdiction, but should abstain from determining the jurisdiction of the Denver Probate Court.* ............................43

**IV.  THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AGAINST PARTIES OVER WHOM THE COURT HAD NO JURISDICTION TO ORDER SUCH RELIEF.**................................................................ 44

  A.  *The District Court granted preliminary injunctive relief against GLG without any factual basis* ...................................................44

  B.  *The District Court granted preliminary injunctive relief based on a finding of subject matter jurisdiction as to Galle, individually, despite (1) Galle's lack of an agreement to arbitrate with Noble, and (2) his participation only as Conservator in the underlying arbitration.* ....................................47

**CONCLUSION**.......................................................................52

# TABLE OF CITATIONS

**Page**

## CASES

*31 Foster Children v. Bush, 329 F.3d 1255 (11th Cir. 2003)* ............................... 38

*ADT LLC v. NorthStar Alarm Services, LLC, 853 F.3d 1348 (11th Cir. 2017)*..... 45

*Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265 (1995)* ..................

*Arthur J. Gallagher Serv. Co. v. Egan, 514 F. App'x. 839 (11th Cir. 2013)*.......... 30

*Barone v. Wells Fargo Bank, N.A., 709 Fed. Appx. 943 (11th Cir. 2017)*....... 34, 39

*Bender v. Centrust Mortgage Corp., 51 F.3d 1027 (11th Cir. 1995)*.................... 33

*Black v. Black, 422 P.3d 592 (Colo. App. 2018)* .................................................... 36

*Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) ................................. 29

*Burr & Forman v. Blair*, 470 F.3d 1019 (11th Cir. 2006)...................................... 52

*Cafaro v. Pasco Prob. Circuit Court*, 8:11-CV-111-T-33TGW, 2011 WL

    722975, at *1 (M.D. Fla. Feb. 7, 2011) *report and recommendation*

    *adopted*, No. 8:11-CV-111-T-33TGW, 2011 WL 719157

    (M.D. Fla. Feb. 23, 2011) ................................................................................. 36

*Carter v. Dep't of Children & Families*, No. 21-13128, 2022 WL 2921310,

    at *1 (11th Cir. July 26, 2022) ............................................................. 37, 38, 40

*Cavanaugh v. Geballe*, 28 F.4th 428 (2d Cir. 2022) ............................................. 39

*Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286 (11th Cir. 2004)......... 13, 47

*Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*,

377 F.3d 1164 (11th Cir. 2004), ............................................................... 49, 51

*De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212 (1945) ................... 33

*Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312 (11th Cir. 2019)............. 13

*Ex parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868)............. 52

*Fed. Trade Comm'n v. On Point Capital Partners LLC*, 17 F.4th 1066

   (11th Cir. 2021)........................................................................................... 12, 34

*Finkelstein v. Se. Bank, N.A.*, 490 So. 2d 976 (Fla. 3d DCA 1986) ...................... 33

*Frejlach v. Butler*, 575 F.2d 1026 (8th Cir. 1978)................................................. 31

*Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308

   (1999) ................................................................................................... 17, 18, 24

*Harper v. Pub. Serv. Com'n of W.VA.*, 396 F.3d 348 (4th Cir. 2005) ................... 35

*ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) .......................... 28

*Johnson v. Pires*, 968 So. 2d 700 (Fla. 4th DCA 2007) ....................................... 50

*Jones v. Law*, 2:17CV109-WKW-TFM, 2017 WL 2347683, at *2

   (M.D. Ala. May 1, 2017), *report and recommendation adopted*,

   2:17-CV-109-WKW, 2017 WL 2346841 (M.D. Ala. May 30, 2017)............. 36

*Juidice v. Vail*, 430 U.S. 327 (1977)................................................................ 37, 39

*Klay v. Utd. Healthgroup, Inc.*, 376 F.3d 1092 (11th Cir. 2004) .......................... 13

*Konover Realty Assoc., Ltd. v. Mladen,* 511 So. 2d 705 (Fla. 3d DCA 1987)....... 27

*Lo v. Aetna Intern., Inc.*, No. 3:99CV195 JBA, 2000 WL 565465, at *4

(D. Conn. Mar. 29, 2000) ..................................................................... 50

*MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234 (11th Cir. 2005) ............. 13, 47

*Marshall v. Marshall*, 547 U.S. 293 (2006) ............................................ 42

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346

(M.D. Fla. 2002) ....................................................................... 31

*Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ... 34

*Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507

(11th Cir. 1994) ...................................................................... 20, 26

*Moore v. Sims*, 442 U.S. 415, 435, 99 S. Ct. 2371 (1979) ...................................... 38

*Mt. Hawley Ins. Co. v. JP Roosevelt, LLC*, 20-20186-CIV, 2020 WL 6134269,

at *4 (S.D. Fla. Apr. 9, 2020) .............................................................. 41

*Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*,

896 F.2d 1283 (11th Cir. 1990) ........................................................ 31

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350

(1989) .................................................................................. 35

*Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1 (1987) ....................................... 35

*Piambino v. Bailey*, 757 F.2d 1112 (11th Cir. 1985) ................................... 28

*Pianeta Miami, Inc. v. Lieberman*, 949 So. 2d 215 (Fla. 3d DCA 2006) .............. 27

*PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674 (5th Cir. 1973) ......................... 42

*Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456 (1939) .................... 41

*Red Carpet Corporation v. Miller*, 708 F. 2d 1576 (11th Cir. 1983) .................... 37

*Reed v. Campbell*, 476 U.S. 852 (1986) ......................................... 38, 40

*Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL

    12164644, at \*2 (S.D. Fla. June 28, 2013) ...........................................

*Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520 (11th Cir. 1994) .............................. 41

*Roth v. Bank of the Commonwealth*, 583 F.2d 527 (6th Cir. 1978) *cert. denied*,

    440 U.S. 944, 99 S.Ct. 1420, 59 L. Ed. 2d 632 (1979)....................................... 29

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999) ....................................... 43

*Sarhank Group v. Oracle Corp.*, 404 F.3d 657 (2d Cir. 2005) ............................. 50

*Selton v. U.S. Bank Tr. Nat'l Ass'n*, 124 F. Supp. 3d 1245 (M.D. Fla. 2015)......... 41

*Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013)..................... 34, 35, 36

*Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s)*

    *of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*,

    910 F.3d 1130, 1171 (11th Cir. 2018) ............................................... 29

*Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969 (2d Cir. 1989)........... 31

*United States v. Askins & Miller Orthopaedics, P.A*., 924 F.3d 1348

    (11th Cir. 2019)..................................................................... 26

*United States v. George*, 697 Fed. Appx. 654 (11th Cir. 2017) ............................ 41

*Viking River Cruises, Inc. v. Moriana*, No. 20-1573, 142 S.Ct. 1906 (2022)........ 49

*Williams v. Adkinson*, 792 F. Supp. 755, 766 (M.D. Ala. 1992), aff'd,

987 F.2d 774 (11th Cir. 1993) ............................................................. 35

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ...................................... 12

*Younger v. Harris*, 401 U.S. 37 (1971) ............................................................ 15, 34

## STATUTES AND CODE PROVISIONS

28 U.S.C. § 1292(a)(1) ................................................................................2

28 U.S.C. § 1331 ......................................................................................1

28 U.S.C. § 1334 .....................................................................................42

9 U.S.C. § 203 .........................................................................................1

§ 76.12, Fla. Stat. ...............................................................................27, 28

§ 77.031, Fla. Stat. .................................................................................28

§ 78.068, Fla. Stat. .................................................................................28

§ 13-9-103(3), Colo. Rev. Stat. ....................................................................37

## RULES AND REGULATIONS

11th Cir. R. 26.1-1 .................................................................................C-1

11th Cir. R. 28-1(c) ..................................................................................i

11th Cir. R. 34-3(c) ..................................................................................i

Fed. R. App. P. 26.1 ...............................................................................C-1

Fed. R. App. P. 34(a) .................................................................................i

Fed. R. App. P. 32(a)(5) .............................................................................1

Fed. R. App. P. 32(a)(6) .............................................................................1

Fed. R. App. P. 32(a)(7)(B) ...........................................................................1

Fed. R. Civ. P. 65 .......................................................................................28

## STATEMENT OF JURISDICTION

Appellee/Petitioner Noble Prestige Limited ("Noble") filed the underlying action against Appellants Craig Thomas Galle in his individual capacity[1] and The Galle Law Group, P.A. ("GLG"), and Respondent Paul Horn pursuant to the District Court's subject matter jurisdiction under the 28 U.S.C. § 1331 and 9 U.S.C. § 203, also known as the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").  (ECF 1 at 3-4.)

However, in the Eleventh Circuit, absent a signed agreement to arbitrate, a Court lacks jurisdiction to entertain an action under the New York Convention. *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1292 (11th Cir. 2004). Here, only Horn had such a signed agreement with Noble. As addressed below in Argument Section IV, neither Galle nor GLG had such an agreement. The District Court therefore lacks subject matter jurisdiction as to Galle and GLG.

The District Court entered the two orders being appealed from on March 31, 2022. Galle and GLG filed their notice of appeal of both orders on May 2, 2022. This appeal is therefore timely.

As explained in detail in Appellant's response to this Court's jurisdictional questions, filed August 10, 2022, this Court has appellate jurisdiction over the

---

[1] Noble did not name Galle in his capacity as Conservator. Rather, Galle has appeared in this case (and in this appeal) as Conservator in order to represent the interests of Horn's Conservatorship Estate. Noble has still not asserted any claims against Galle as Conservator.

1

District Court's March 31, 2022 order granting a temporary restraining order because it is, in effect, an interlocutory order granting a preliminary injunction, immediately appealable under 28 U.S.C. § 1292(a)(1). Additionally, the Court can and should exercise its pendent appellate jurisdiction over the District Court's finding of subject matter jurisdiction as to Galle in its March 31, 2022 order on Appellants' motion to dismiss. Reviewing this issue is both necessary to ensure a meaningful review of, and inextricably intertwined with, the injunction order. Resolution of the Court's jurisdictional questions remains pending.

## STATEMENT OF THE ISSUES

I.   Whether the District Court erred as a matter of law in granting Noble preliminary injunctive relief against Galle, individually, and GLG under Federal Rule of Civil Procedure 65 instead of evaluating the proposed relief under Federal Rule of Civil Procedure 64, where Noble did not raise any equitable claims, and where the sole basis for the injunction was to prevent dissipation of assets before judgment.

II.  Whether the District Court erred in granting preliminary injunctive relief as to $10 million dollars without requiring, or even considering, any bond.

III. Whether the District Court erred as a matter of law in finding that Noble satisfied the requirements for preliminary injunctive relief where the sole basis for the injunction was to prevent dissipation of assets.

IV.  Whether the District Court erred as a matter of law in not abstaining from exercising jurisdiction over funds already held under the jurisdiction of the Denver Probate Court as part of a conservatorship estate, where the Denver Probate Court had exercised in rem jurisdiction as part of its essential judicial function of supervising and controlling conservatorship assets.

V.   Whether the District Court committed clear error in granting preliminary injunctive relief against GLG and Galle, individually, without any factual

basis, and where neither GLG nor Galle, individually, possess any of the subject funds.

VI.   Whether the District Court erred as a matter of law in granting preliminary injunctive relief based on a finding of subject matter jurisdiction as to Galle, individually, despite (1) Galle's lack of an agreement to arbitrate with Noble in any capacity, and (2) his participation only as Conservator in the underlying arbitration.

# STATEMENT OF THE CASE[2]

## *Nature Of The Case*

This appeal stems from Noble's efforts to enforce an international arbitral award relating to a usurious loan of $500,000 by an unlicensed lender (Noble) to an incompetent borrower (Horn). Neither Galle (in any capacity) nor GLG were party to the underlying loan, and have only been dragged into this fight by virtue of Noble's efforts to obtain and enforce the arbitral award against Horn. Although the District Court has entered a preliminary injunction freezing $10 million in assets indefinitely, neither Galle (individually) nor GLG hold the subject funds. Indeed, as mentioned above, Galle has only been named in this case individually, not as Conservator, and has only appeared as Conservator in this case to represent the interests of Horn's Conservatorship Estate.

Noble's claim in this action is based on a private arbitration award before a panel in Hong Kong. In the course of the arbitration, the arbitration panel flouted both its own rules and international standards of due process to (1) prohibit Galle from appearing as Conservator on Horn's behalf, (2) enter a costs award against

---

[2] This brief refers to Appellee Noble Prestige Limited as "Noble"; Appellant The Galle Law Group, P.A., as "GLG," and Appellant Craig Thomas Galle as "Galle." Galle is appealing in two very separate capacities—individually and as Conservator for Respondent Paul Horn ("Horn"). When referring to Galle, this brief will specify whether it is referring to Galle individually or as "Conservator." References to the record are to the District Court docket entries (*e.g.*, (ECF 1 at 1] refers to district court docket entry 1 at page 1).

Galle individually, despite his status as a non-party who never consented to arbitration of any disputes against him, and (3) enter a default judgment against Horn. In doing so, the arbitration panel maligned Galle for simply carrying out his fiduciary duty as Conservator, and personally punished him for fulfilling the orders of a Denver, Colorado based probate court (the "Denver Probate Court"), while simultaneously refusing to tell him how he could possibly prove to the arbitration panel that he was authorized to represent Horn.

Despite this, Noble now seeks to enforce the arbitral awards resulting from this highly irregular arbitration. Pursuant to its Petition, Noble sought (and obtained from the District Court) a preliminary injunction (titled as a temporary restraining order), freezing $10 million in Conservatorship assets. Notably, nowhere in its multiple applications for a temporary restraining order does Noble address a key fact, which overshadows its entire claim and is determinative of its requests. That fact, well known to Noble, is that all of Horn's funds are held "in custodia legis" by the Denver Probate Court. Despite this, Noble has taken no steps to bring its claim before the Denver Probate Court, and has failed to show how the District Court can validly freeze Conservatorship funds pursuant to a petition that does not actually name the Conservator as a respondent.

6

## Statement of the Facts and Course of Proceedings Below

A.   Factual Background

In December 2011, Noble loaned Horn $500,000 to hire experts in longstanding litigation between Horn and AT&T Mobility (the "Loan Agreement").  (ECF 1 at ¶22); (ECF 1-1 at 5-15).  Although the loan agreement did not provide for interest, Horn agreed to repay Noble at least $5 million, or if greater, 5% of the proceeds of any settlement or judgment in the litigation, (ECF 1-1 at 15), thus assuring Noble disguised interest of at least $4,500,000. The loan principal was disbursed to Horn over several years as needed to retain and pay expert witnesses.  (ECF 1 at ¶ 27.)

Horn's long-standing mental illness rendered him unable to assist in the ongoing litigation and negotiation with AT&T Mobility.  (ECF 20-1 at 3.)  In early 2017, an application for a Special Conservatorship for Horn was filed in the Denver Probate Court (referred to as the "Conservatorship" or the "Conservatorship Estate").  *Id.*  On March 7, 2017, the Probate Court entered an order appointing Craig Galle as a Special Conservator for Horn (the "Conservator"), declaring Horn "incapable of making decisions concerning his lawsuit" against AT&T Mobility and lacking "the ability to make simple decisions."  (ECF 20-1 at 3-4, 17-20.)  At the same time, the Denver Probate Court also appointed James Britt as Horn's guardian ad litem ("GAL").  (ECF 20-1 at ¶

15.) Within weeks of his appointment, the Conservator advised Noble of the Conservatorship. (ECF 1-1 at 98, ¶ 58.)

On August 8, 2017, the Conservator settled the AT&T Mobility litigation for a $57.5 million payment to the Conservatorship Estate. (ECF 1-1 at 35, ¶ 59.) The Probate Court approved the settlement on August 23, 2017. *Id.* at ¶ 60. Thereafter, Noble sought payment of $5 million from the Conservatorship Estate under the Loan Agreement. *Id.* at ¶ 61. Given the questionable enforceability and usurious nature of the Loan Agreement, the Conservator did not immediately approve the requested $5 million payment to Noble. (ECF 20-1 at 13, ¶ 65.) Mr. Britt, the GAL, offered to pay $2 million (four times the loan principal) to Noble to resolve its claim. (ECF 1-1 at 35, ¶ 61.) Noble rejected this offer and filed for arbitration in Hong Kong. (ECF 20-1 at 7, ¶ 32.)

Pursuant to orders of the Denver Probate Court, the Conservator hired counsel in Hong Kong and answered the Arbitration in early 2018. *Id.* at ¶¶ 38-39. On March 29, 2019, the Hong Kong Arbitration Panel ("Panel") entered an interim order, finding that the Probate Court had no jurisdiction to appoint the Conservator to defend the arbitration and, hence, the Conservator lacked authority to defend Horn's interests before the Panel. (ECF 1-1 at 47-48, ¶¶ 113-116; 50-51, ¶¶ 125-128; 52-51, ¶¶ 134-137.) Despite this, the Panel denied Noble's request for a "freezing order" because the Panel lacked jurisdiction to reach Horn's assets, which

8

"were being administered under the auspices of an overseas court," *i.e.*, the Denver Probate Court. *Id.* at 62-64, ¶¶ 170-178. Thus, the Panel recognized that the Denver Probate Court's jurisdiction over Horn's assets.

Without an appearance by Horn and refusing to recognize the Conservator and his Hong Kong counsel, the Panel entered a default judgment against Horn on May 14, 2020. *Id.* at 90-133. Although Horn was unrepresented, the Panel still refused Noble's overreaching demands for an award of the full $57.5 million settlement under a claim of "unjust enrichment," *id.* at 123-24, ¶¶ 191-197; 127, ¶ 207, and ultimately awarded Noble the alleged repayment amount due of $5 million plus attorneys' fees and costs of HK$3,800,530.05, and prejudgment and postjudgment interest. *Id.* at 131-32.

B.     The Litigation

Noble then filed, in December 2020, the underlying Petition to Confirm and Enforce International Arbitration Awards and for a Temporary Restraining Order (the "Petition") in the United States District Court, Southern District of Florida, seeking confirmation and enforcement of the three arbitral awards: (1) a interlocutory procedural order (defined as the "Interim Award" in the Petition), (2) the award of costs against Galle individually (defined as "Partial Award on Costs" in the Petition), and (3) the monetary award against Horn (defined as "Final Award" in the Petition) (collectively, all of which are referred to as "Arbitral

Awards" herein). (ECF 1) The Petition named as respondents Horn, GLG and Galle, individually. *Id.* Galle was not named in his capacity as Conservator. *Id.*

Noble also filed an ex parte request for a temporary restraining order. (ECF 7.) Notably, Noble failed to acknowledge in its request that, pursuant to the Conservatorship, Horn's funds are held "in custodia legis" under the jurisdiction of the Denver Probate Court. *Id.* Noble also did not explain why it was not simply placing its claim before the Denver Probate Court directly. *Id.* Noble further failed to recognize that Galle as Conservator and Galle individually are not one and the same, and that the Conservator is a separate legal entity. *Id.* Noble did not name Galle in his capacity as Conservator. (ECF 1); (ECF 7).[3]

After being served with the Petition in February 2021, GLG and Galle (appearing individually and as Conservator for Horn) opposed Noble's request for a temporary restraining order, arguing that (1) the District Court should abstain from exercising jurisdiction over funds held under the control and supervision of the Denver Probate Court, (2) no need exists for entry of injunctive relief since all funds are already under the Denver Probate Court's supervision, and (3) Noble has no remedy under Federal Rule of Civil Procedure 64, or under any Florida statute

---

[3] As mentioned above, Galle has appeared in this case (and in this appeal) as Conservator in order to represent the interests of Horn's Conservatorship Estate. Noble has still not asserted any claims against Galle as Conservator.

or case law to freeze or tie up Conservator accounts.  (ECF 21.)  Noble replied in support of its request for a temporary restraining order.  (ECF 25.)

Appellants also moved to dismiss the Petition on a number of grounds (the "Motion to Dismiss").  (ECF 20.)  As is relevant to here, Appellants argued in their Motion to Dismiss that the district court lacked subject matter jurisdiction over GLG and Galle, individually, due to lack of an agreement to arbitrate with Noble.[4] *Id.* at 13-16.  Noble responded in opposition.  (ECF 24.)

The District Court held a brief hearing on the Motion to Dismiss and temporary restraining order request on September 17, 2021. (ECF 32); (ECF 73).[5] During the hearing, the District Court refused to hear any argument from GLG and Galle on Noble's temporary restraining order request. (Tr. 37-39.)

The District Court issued two orders.  The first order (the "Dismissal Order") granted in part and denied in part Appellants' Motion to Dismiss.  (ECF 44.)  The Dismissal Order found, in relevant part, that it had subject matter jurisdiction as to Galle, individually, and that Galle's lack of a written agreement to arbitrate did not preclude the Panel from entering an arbitral award against him individually,

---

[4] Insofar as there are other issues in the Motion to Dismiss (i.e., personal jurisdiction and service of process on Horn), Appellants do not raise them in this appeal, and reserve the right to do so when they become ripe and appealable in the future. Additionally, as the Petition did not name Galle as Conservator, the Motion to Dismiss did not specifically raise the Conservator's subject matter jurisdiction. Appellants likewise reserve the right to raise any such argument in the future.

[5] The transcript of this hearing will be cited herein as (Tr. __.).

despite the fact that Galle never participated in the arbitration in any capacity other than as Conservator for Horn. (ECF 44 at 10-11.) The District Court granted the Motion to Dismiss as to GLG, however, finding that GLG was neither present at the arbitration, nor was an award entered against it. *Id.* at 11.

The district court's second order (the "TRO") granted Noble's request for a temporary restraining order, an issue on which the District Court refused to hear any argument at the hearing. (ECF 45.) The Court restrained $10 million from "Galle and/or GLG" to secure satisfaction of the potential judgment, but without satisfying any recognized standard for pre-judgment relief or requiring any bond, and failing to address the fact that the assets are already being held under the control and supervision of the Denver Probate Court, creating direct conflict between the jurisdiction of the two courts. (ECF 45 at 5.) Significantly, the TRO did not specify any end date—its duration was unlimited. *Id.*

Appellants now appeal the TRO, as well as the district court's determination of subject matter jurisdiction over Galle individually in the Dismissal Order.

### *Standard Of Review*

"A preliminary injunction is an 'extraordinary remedy never awarded as of right.'" *Fed. Trade Comm'n v. On Point Capital Partners LLC*, 17 F.4th 1066, 1077-78 (11th Cir. 2021) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). This Court reviews "a district court's grant of a preliminary

injunction for abuse of discretion." *Id.* (citing *Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1317 (11th Cir. 2019). However, this Court reviews "the preliminary injunction's underlying legal conclusions de novo and its findings of fact for clear error." *Id.*

"A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination," "makes findings of fact that are clearly erroneous," or "appl[ies] the law in an unreasonable or incorrect manner." *Klay v. Utd. Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004).

A district court's rulings on subject matter jurisdiction are reviewed *de novo*. *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290  (11th Cir. 2004); *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005).

## **SUMMARY OF THE ARGUMENT**

In granting Noble's request for preliminary injunctive relief, the District Court erred in several ways, any one of which support reversal.

At the outset, the District Court erred as a matter of law in ordering preliminary injunctive relief under Federal Rule of Civil Procedure 65 instead of Federal Rule of Civil Procedure 64. The District Court effectively granted a prejudgment attachment of property to secure satisfaction of a potential money judgment. In an action at law, such as here, preliminary injunctive relief is not available to interfere with a debtor's pre-judgment use of his property. Instead, Rule 64 is the exclusive procedural rule to restrain assets pre-judgment where, as here, (1) an action seeks only money damages, and (2) the restraint is requested to assure future satisfaction of a money judgment.

Even if the District Court could have granted preliminary injunctive relief here under Rule 65, the District Court erred in failing to set, or even consider, any bond as required under Rule 65(c).

Additionally, even if Rule 65 did apply, the District Court's reasoning for the TRO was based solely on Noble's allegations concerning dissipation of funds, and was therefore legally insufficient. Because Noble's argument was based solely on the potential it would not recover funds to satisfy its judgment, Noble failed, as a matter of law, to show irreparable harm and inadequacy of legal remedies.

14

The District Court further erred as a matter of law in declining to abstain in this matter and, instead, exercising jurisdiction over funds already held under the ongoing control and supervision of the Denver Probate Court. At least three different doctrines support abstention here.

First, the District Court should have abstained under *Younger v. Harris*, 401 U.S. 37 (1971), as Noble is effectively seeking federal intervention into state guardianship proceedings, asking this Court to ignore proper respect for the Denver Probate Court's essential judicial functions. The Conservatorship is not only ongoing, the Denver Probate Court's continuing exercise of jurisdiction over the enjoined assets runs directly contrary to the TRO and Noble's request for in rem jurisdiction over the assets. At issue here is the Denver Probate Court's very ability to perform its essential function of exerting control over Conservatorship assets, in line with its orders establishing such control. Not only does the TRO interfere with this, it inherently undermines the very process by which the Denver Probate Court obtained control.

Second, the District Court also should have exercised abstention based on the doctrine of prior exclusive jurisdiction, as the Denver Probate Court has already exercised in rem jurisdiction over the assets at issue, well before Noble filed the Petition.

Third, the probate exception to federal jurisdiction also supports abstention here. Although this doctrine generally applies in diversity jurisdiction cases, it is not restricted to such cases. It demonstrates that the District Court's exercise of jurisdiction over the funds at issue was inappropriate.

The District Court also erred in entering the TRO against GLG, as there was no evidence before the District Court that would permit its finding that the subject funds were in the possession of GLG. Such a factual finding was clear error.

Lastly, the District Court erred as a matter of law in finding that Galle could be subject to any preliminary injunction because the District Court lacked subject matter jurisdiction over the dispute as to Galle. The District Court erroneously failed to acknowledge this Court's binding precedent holding that it lacked subject matter jurisdiction over Galle in the absence of a signed agreement-in-writing. Moreover, the District Court erred as a matter of law in improperly shifting the burden to Galle to prove the lack of subject matter jurisdiction. Because there was a lack of subject matter jurisdiction over Galle, the District Court had no authority to enter the preliminary injunction against him.

For these reasons, Appellants respectfully request that the TRO and the Dismissal Order (only insofar as it finds subject matter jurisdiction as to Galle) be reversed.

**ARGUMENT**

I.  **THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AS IT APPLIED THE WRONG PROCEDURAL AND LEGAL STANDARD.**

> A. *The District Court improperly granted relief under Federal Rule of Civil Procedure 65 instead of evaluating the proposed relief under Rule 64.*

The District Court erred as a matter of law in ordering preliminary injunctive relief under Rule 65 that effectively granted a prejudgment attachment of property to secure satisfaction of a potential money judgment.  In an action at law, such as here, preliminary injunctive relief is not available to interfere with a debtor's pre-judgment use of his property.  *See e.g., Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994); *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318–324 (1999).

Instead, Rule 64 is the exclusive procedural rule to restrain assets pre-judgment where: (1) an action seeks only money damages, and (2) the restraint is requested to assure future satisfaction of a money judgment.  *Rosen*, 21 F.3d at 1530.  "Rule 64, and not Rule 65 (which governs injunctions generally), provides the standard for evaluating a request for preliminary injunctive relief that is, in reality, no more than a request for prejudgment attachment[.]" *Id.* (quoting *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521–22 (11th Cir. 1994)).  As the Supreme Court observed, permitting preliminary injunctive

17

relief under Rule 65 to freeze assets to secure a pre-judgment debt would render Rule 64 "a virtual irrelevance." *Grupo Mexicano de Desarrollo S.A.*, 527 U.S. at 330–331.

Here, both of these factors are met: (1) the action seeks only money damages, and (2) the restraint is requested to assure future satisfaction of a money judgment; and therefore the District Court's preliminary injunction must be vacated. *Rosen*, 21 F.3d at 1530 (vacating a Rule 65 preliminary injunction freezing defendant's assets that was imposed to protect a potential money judgment in an action for legal damages, and holding Rule 64 was the exclusive procedure to seek such relief); *Grupo Mexicano de Desarrollo S.A.*, 527 U.S. at 330–331 (holding the District Court had no authority to issue an injunction under Rule 65 that preventing defendants from disposing of their assets pending adjudication of plaintiffs' contract claim for money damages).

Under the law of the Eleventh Circuit and the Supreme Court, the District Court could not grant a preliminary injunction freezing ten million dollars to secure payment of the potential judgment in Noble's favor, except under Rule 64. This error of law was not harmless, given that Rule 64, which incorporates state law prejudgment remedies, provided no basis for Noble to restrain assets to secure payment of a judgment.

### 1.    Noble's Action Sought Only Legal Damages.

Noble's action sought only legal damages.   Specifically, Noble's Petition sought the following five forms of relief:

(1) confirmation and enforcement of the Arbitral Awards, two of which awarded money damages against Respondents,[6]

(2) a money judgment against Respondents for the sums that were awarded in the Arbitral Awards plus interest,

(3)  retention of jurisdiction to satisfy the judgment,

(4) a temporary restraining order, and preliminary injunction, restraining the transfer of assets of Respondents until judgment, pursuant to Rule 65, and

(5) all other relief that is just and proper, including costs of the action.[7]

(ECF 1 at 28, 34-35.)

Importantly, Noble did not seek enforcement of any agreement.  Noble did not assert any equitable claim (*e.g.*, foreclosure, recission, restitution, or

---

[6] The Interim Award did not seek money damages but was on the preliminary issue of Galle's authority as Conservator to represent Horn.  (ECF 1-1 at 47-48, ¶¶ 113-116; 50-51, ¶¶ 125-128; 52-51, ¶¶ 134-137.)

[7] Noble's boilerplate request for "just and proper" relief cannot be interpreted as a request for equitable relief.  *Rosen*, 21 F.3d at 1526, n.12.

disgorgement).[8]  Noble did not seek any permanent injunctive relief.  Noble did not seek any determination as to its entitlement or priority to a discrete fund or *res* by foreclosure, declaratory action or constructive trust or otherwise.  In sum, "a potential award of money damages is all that is at stake" in this action.  *Rosen*, 21 F.3d at 1526.

While Noble alleged the existence of an Irrevocable Letter of Instruction and Security Agreement in the Petition (ECF 1 at 7-8) whereby Horn purportedly agreed to a security interest in funds due to him from his AVI in the AT&T Mobility litigation and GLG agreed to act as disbursing agent for same, Noble did not seek any determination about the validity or enforceability of these agreements, for foreclosure of the security agreement, or any other equitable relief.  Regardless of whether a cause of action "implicates a characteristic which might otherwise trigger equity jurisdiction," if "the remedy sought is the recovery of money (whether as collection on a debt or as damages) [then the case] do[es] not fall within the jurisdiction of equity."  *Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc*., 14 F.3d 1507, 1518 (11th Cir. 1994).

In Noble's request for a temporary restraining order and preliminary injunction, Noble argued the District Court had authority to issue the injunction by inaccurately alleging that the arbitral awards ordered payment, or turnover, of

---

[8] The nature of Noble's claims is not changed by its assertion of in rem **jurisdiction** in the Petition. (*See* ECF 1 ¶ 20.)

20

specific funds from GLG's trust account.[9]  However, the Partial Award on Costs and Final Award do not order payment from any specific source, but rather are simple money judgments against Galle and Horn, respectively.[10]  In fact, in the Interim Award, the arbitral panel declined a claim by Noble to freeze funds located outside the jurisdiction, (ECF 1-1 at 63) and disclaimed that the claim at issue was an *in rem* claim for a specific source of funds.  (ECF 1-1 at 40).  The Tribunal stated "[t]he subject matter of this arbitration is **not an *in rem* claim** against the sums recovered for Respondent pursuant to the AT&T Action. **The Claimant** (if it prevails . . . []] **may look to assets** belonging to Respondent . . . located in other jurisdictions **across the globe**, to satisfy any award that might ultimately be made in its favour." (ECF 1-1 at 40-41) (emphasis added).

Accordingly, it is plain from the Petition and Noble's Motion requesting the temporary restraining order that the action is purely for legal damages, and did not

---

[9] *See* ECF 1 at 29 ("**the funds in GLG's possession which, under the Awards**, shall be disbursed to Noble"); ECF 1 at 28-29 ("**the funds Horn received** from the AT&T Parties, in respect of his Appreciated Value Interest, were deposited into the trust account of GLG, . . . **which funds have been ordered** to be paid to Noble under the Awards"); ECF 7 at 3 ("**Horn was to deposit funds** into the trust account of GLG . . . and the **Final Award requires those funds to be paid** to Noble")) (emphasis added).

[10] *See* ECF 1-1 at 84 ("Galle do pay the Claimant the sum of HK$3,250,000. . ."); ECF 1-1 at 131-132 ("Respondent pay to Claimant forthwith . . . the sum of US$5,000,000").

seek any equitable claim for relief, and that the Arbitral Awards sought to be confirmed did not order entitlement to any specific source of funds.

### 2.    The Requested Asset Freeze Was to Secure Funds to Satisfy the Potential Money Judgment

Noble's argument for the asset restraint was clearly and repeatedly premised on its allegation that absent restraint on the funds, Noble believed its potential money judgment would remain unsatisfied.[11]  Under Rule 65 and the standard for preliminary injunctive relief, Noble argued that it would suffer irreparable injury because of the potential it would not recover funds to satisfy its judgment (ECF 7 at 3–4), and expressly stated that the balance of harms favored Noble because "[s]hould Respondents be permitted to spend, use, transfer, or otherwise encumber such funds, Noble will suffer substantial loss and damage as the **funds will be lost and no longer available at the conclusion of this proceeding**."  (ECF 7 at 5.) (emphasis added).  Clearly, this request was "to protect a future damages remedy." *Rosen*, 21 F.3d at 1530.

---

[11] *See* ECF 1 at 30 ("Noble will suffer irreparable injury if the relief is not granted because, at any time, Respondents may transfer, use, or otherwise encumber the funds that, pursuant to the Awards, are to be disbursed to Noble."); ECF 1 at 31 ("Should Respondents be permitted to spend, use, transfer, or otherwise incumber such funds, Noble will suffer substantial loss and damage in case the funds are no longer available at the conclusion of this proceeding."); ECF 7 at 4 ("once Respondents learn that the Petition has been filed, they will transfer, use, or otherwise encumber the funds that, pursuant to the Awards, are to be disbursed to Noble" and "if those funds are transferred to Respondent Horn himself, it is highly improbable, if not unfeasible, that Noble will ever recover them in full because Horn resides at an unknown location in Thailand.")

It is a key point that Noble failed to argue that it had any claim of an equitable interest in the funds sought to be restrained, other than by virtue of the arbitral awards. While Noble mentioned an Irrevocable Letter of Instruction and Security Agreement, which was also referenced by the District Court in its Order, Noble did not seek any relief in the action to enforce or to foreclose any equitable or security interest in specific funds. The District Court had no occasion to make any factual findings as to the enforceability of such agreements, or Noble's priority in the funds over other parties. Instead, Noble repeatedly justified the asset restraint solely based on the fact that the Arbitral Awards themselves awarded the specific funds sought to be restrained (they did not), and that absent the requested restraint on funds of Respondents, the funds would be dissipated and unable to satisfy a potential judgment.

### 3.    The District Court Erred in Granting Relief Under Rule 65 Because Rule 64 Provided the Exclusive Basis for the Relief Requested.

The District Court erred as a matter of law in granting preliminary injunctive relief to freeze assets sufficient to secure Noble's potential money judgment. Citing the standard for a preliminary injunction, the District Court erroneously determined that Noble was entitled to an asset freeze of $10 million against Galle and GLG of "the payment in respect of Horn's AVI" to prevent "continued dissipation." (ECF 45 at 4-5.) The District Court did not cite Rule 64 or the

standard for state pre-judgment attachment remedies, as Respondents argued was necessary to satisfy. (ECF 21 at 11-12.) Nor did the District Court make any determination that Noble was likely to prevail on any equitable remedies, and it could not have done so given that Noble raised no equitable claims despite its reference to the Irrevocable Letter of Instruction and Security Agreement. The District Court only granted the asset freeze based on its finding that Noble "has a strong probability of proving that it is entitled to enforce the arbitral awards issued by the Tribunal," (ECF 45 at 5), *i.e.*, the Arbitral Awards that granted a pure money judgment to Noble. The District Court's grant of a preliminary injunction to freeze assets pre-judgment to secure satisfaction of a potential money judgment was a clear error of law.

The Eleventh Circuit has stated such in no uncertain terms: "We repeat: preliminary injunctive relief freezing a defendant's assets in order to establish a fund with which to satisfy a potential judgment for money damages is simply not an appropriate exercise of a federal district court's authority." *Rosen v. Cascade Intern., Inc.*, 21 F.3d 1520, 1530 (11th Cir. 1994). The Supreme Court reaffirmed this principle in *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999), holding "the District Court ha[s] no authority to issue a preliminary injunction preventing petitioners

24

from disposing of their assets pending adjudication of respondents' contract claim for money damages."

Rather than Rule 65, instead, "Rule 64 of the Federal Rules of Civil Procedure authorizes the prejudgment attachment of property for the benefit of a plaintiff in certain situations and provides the proper vehicle for plaintiffs seeking to restrain a defendant's assets with an eye towards satisfying a potential money judgment." *Id.* The Eleventh Circuit has explained that the absence of available relief under Rule 64 does not permit Rule 65 to act as a "gap-filler":

> We hold that a district court lacks the authority to issue a preliminary injunction freezing the assets of a defendant in a case seeking only money damages. Rule 64 commands that the proper pretrial remedy to ensure that a fund will be available with which to satisfy a money judgment, a writ of attachment, is available according to the provisions of the forum state's law. But "[w]here the state attachment statute does not authorize prejudgment attachment in a given case, a district court is not authorized . . . to attempt to accomplish the same result by issuing a preliminary injunction."

*Rosen*, 21 F.3d at 1531 (11th Cir. 1994) (quoting *Mitsubishi,* 14 F.3d at 1522 n. 24).

The District Court was required to "look past the terminology to the actual nature of the relief requested" and when "the purpose and effect of the injunction is to provide security for performance of a future order which may be entered by the court," then Rule 64 is appropriate standard to evaluate such request. *Rosen*, 21

F.3d at 1530.    Because the District Court failed to analyze Noble's request under Rule 64, it erred as a matter of law.

### 4.    Under Rule 64, Which Incorporates Florida State Law, Noble Had No Entitlement to the Relief Requested

The District Court's error in granting relief under Rule 65 instead of analyzing the request under Rule 64 was not harmless.  Under Rule 64, there was no basis whatsoever to grant Noble's requested relief.  Rule 64 makes available to district courts "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action" and provides that, except as otherwise provided by the Constitution or an applicable federal statute, such remedies "are available under the circumstances and in the manner provided by **the law of the state** in which the district court is held." (emphasis added).  In short "Rule 64 looks to the law of the state in which the court sits." *United States v. Askins & Miller Orthopaedics, P.A.*, 924 F.3d 1348, 1361 (11th Cir. 2019).

Since the District Court is located in the Southern District of Florida, under Rule 64, Florida law governs Noble's request for pre-judgment restraint of assets that is effectively a request for attachment.[12]    Noble failed to invoke, and the

---

[12] "Attachment is an ancillary remedy by which a plaintiff acquires a lien upon the property of a defendant in order to obtain satisfaction of a judgment that the plaintiff may ultimately obtain at the conclusion of the litigation." *Mitsubishi Intern. Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1521 (11th Cir. 1994).

District Court did not address or make any factual findings to support, the remedy of attachment under Florida law.  Unsurprisingly so, as the requirements for Florida pre-judgment attachment under Fla. Stat. § 76.04 are simply not met, and even if they were, the remedy would require a bond of at least double the debt, thus, over $20 million based on the amount restrained of $10 million.[13]  Fla. Stat. § 76.12.

Further, in Florida, "in an action at law for money damages, there is simply no judicial authority for an order requiring the deposit of the amount in controversy into the registry of the court . . . or indeed for any restraint upon the use of a defendant's unrestricted assets prior to the entry of judgment." *Rosen*, 21 F.3d at 1531 (quoting *Konover Realty Assoc., Ltd. v. Mladen,* 511 So. 2d 705, 706 (Fla. 3d DCA 1987)).  *See also Pianeta Miami, Inc. v. Lieberman*, 949 So. 2d 215, 217 (Fla. 3d DCA 2006) ("It is well settled that an injunction cannot be used to restrain the use of a party's unrestricted assets prior to the conclusion of an action at law.")

Because Florida courts do not have the authority to issue the type of injunction that the District Court issued, and because Noble failed to demonstrate that any of the statutory grounds for attachment apply, the District Court's preliminary injunction was not a proper writ of attachment under Rule 64, and must be vacated.

---

[13] Noble suggested a bond of only $10,000, evidencing further that Noble did not attempt to satisfy the standards for a pre-judgment attachment under Florida law.

**B. *The District Court erred in granted preliminary injunctive relief as to $10 million dollars without requiring, or even considering, the setting of any bond.***

Even if the District Court was permitted to grant preliminary injunctive relief under Rule 65 (it was not), the District Court erred in failing to set, or even consider, any bond.[14]  Rule 65(c) provides in relevant part:

> (c) Security. The court may issue a preliminary injunction or a temporary restraining order **only if the movant gives security** in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

Fed. R. Civ. P. 65(c) (emphasis added).  "Rule 65(c) requires a party obtaining an injunction to post a bond" and the posting of such bond provides "a vital remedy, the recovery of damages against the bond, [that] the law affords a party who has been wrongfully enjoined." *Piambino v. Bailey*, 757 F.2d 1112, 1142–1143 (11th Cir. 1985).

A District Court errs where it fails to consider whether the party seeking the injunction should post a bond.  *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1361 n. 22 (5th Cir. 1978) (noting such deficiency as one of the alternative bases

---

[14] A bond would have also been required under Rule 64, incorporating state law pre-judgment remedies, as Florida law's pre-judgment remedy statutes require bonds in double the debt demanded. *See* Fla. Stat. § 76.12 (attachment); Fla Stat. § 77.031 (garnishment); Fla. Stat. § 78.068 (replevin).

for reversal).[15]  Although "[d]ecisions regarding the security required to be posted in connection with the issuance of a preliminary injunction are entrusted to the discretion of the district court," *Transcon. Gas Pipe Line Co., LLC v. 6.04 Acres, More or Less, Over Parcel(s) of Land of Approximately 1.21 Acres, More or Less, Situated in Land Lot 1049*, 910 F.3d 1130, 1171 (11th Cir. 2018), "it is inherent in the use of discretion that it be exercised and not neglected altogether." *Roth v. Bank of the Commonwealth*, 583 F.2d 527, 539 (6th Cir. 1978), *cert. denied*, 440 U.S. 944, 99 S.Ct. 1420, 59 L. Ed. 2d 632 (1979).

In this action, Noble acknowledged the bond requirement and had solicited the District Court set a bond in the minimal amount of $10,000, as part of its request for preliminary injunctive relief.  (ECF 1 at 33; ECF 7 at 8.)  Respondents also argued that a bond was required, but in the amount of at least double the debt. (ECF 21 at 12.)  Nevertheless, the District Court's preliminary injunction simply failed to address any bond requirement whatsoever.  The District Court made no consideration of the proper amount of bond at the Hearing.  The District Court refused to entertain argument at the Hearing on Respondent's opposition to the preliminary injunction and the *de minimus* bond request by Noble.  (Tr. 37-39.)  In short, the District Court ignored the bond requests and the bond requirement

---

[15] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

altogether.

Despite the parties' arguments, "[n]o security was required and no determination by the District Court was made on the issue one way or the other." *Roth*, 583 F.2d at 538. Thus, the District Court erred by failing to exercise any discretion at all on the question of requiring a bond, and reversal of the injunction is required on this basis alone. *ITT Cmty. Dev. Corp.*, 569 F.2d at 1361 n.22; *Roth*, 583 F.2d at 539.

## II. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AGAINST APPELLANTS, IN THE FORM OF A TEMPORARY RESTRAINING ORDER, BECAUSE ITS SOLE REASONING—DISSIPATION OF FUNDS—IS FACIALLY INSUFFICIENT.

As argued above, *supra* Argument Section I.A, Rule 65 does not apply here. But even if it did, the District Court's reasoning for the TRO was based solely on Noble's allegations concerning dissipation of funds, and was therefore legally insufficient.

The party seeking a preliminary injunction under Rule 65 must demonstrate: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered absent an injunction; (3) that the injury to movant outweighs the injury the proposed injunction would cause to the opposing party; and (4) that the proposed injunction would serve the public interest. *See Arthur J. Gallagher Serv.*

*Co. v. Egan*, 514 F. App'x. 839, 843 (11th Cir. 2013); *Merrill Lynch, Pierce,*

*Fenner & Smith Inc. v. Dunn*, 191 F. Supp. 2d 1346, 1350 (M.D. Fla. 2002).

"A showing of irreparable harm is 'the sine qua non of injunctive relief." *Ne.*

*Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville, Fla.*, 896

F.2d 1283, 1285 (11th Cir. 1990) (quoting *Frejlach v. Butler*, 575 F.2d 1026, 1027

(8th Cir. 1978)). "The injury must be 'neither remote nor speculative, but actual

and imminent[.]'" *Id.* (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888

F.2d 969, 973 (2d Cir. 1989)).

> An injury is "irreparable" only if it cannot be undone
> through monetary remedies. . . . "Mere injuries, however
> substantial, in terms of money, time and energy
> necessarily expended in the absence of a stay, are not
> enough. The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in
> the ordinary course of litigation, weighs heavily against a
> claim of irreparable harm."

*Id.* (quoting *Sampson*, 415 U.S. at 90).

Noble failed to show irreparable harm and inadequacy of legal remedies. As

mentioned above, Noble's argument is based solely on the potential it would not

recover funds to satisfy its judgment (ECF 7 at 3–4). Noble also argued that the

balance of harms favored Noble because "[s]hould Respondents be permitted to

spend, use, transfer, or otherwise encumber such funds, Noble will suffer

substantial loss and damage as the funds will be lost and no longer available at the

conclusion of this proceeding."  (ECF 7 at 5); *see also supra* n.10 (listing similar

claims in the Petition and motion seeking the TRO). Not only is this insufficient under Rule 65, it is insufficient—at best—under this Court's case law.

The potential dissipation of assets that could be used to satisfy a judgment does not, as a matter of well-established law, constitute lack of an adequate remedy. As discussed in detail above, this Court in *Rosen* made it abundantly clear that a mere concern regarding collectability of a judgment does not entitle Noble to the equitable relief that the district court granted in freezing the $10 million. *Rosen*, 21 F.3d at 1531. In essence, the District Court created a constructive trust on Conservatorship Estate assets to allow Noble to collect on any judgment that may be awarded. This is not a proper use of injunctive relief.

Faced with such an order in *Rosen*, this Court stressed:

> To sustain the challenged order would create a precedent of sweeping effect. . . . Every suitor who resorts to chancery for any sort of relief by injunction may, on a mere statement of belief that the defendant can easily make away with or transport his money or goods, impose an injunction on him, indefinite in duration, disabling him to use so much of his funds or property as the court deems necessary for security or compliance with its possible decree. And, if so, it is difficult to see why a plaintiff in any action for a personal judgment in tort or contract may not, also, apply to the chancellor for a so-called injunction sequestrating his opponent's assets pending recovery and satisfaction of a judgment in such a law action. No relief of this character has been thought justified in the long history of equity jurisprudence.

*Id.* at 1528 (quoting *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 222-23 (1945)); *see also Bender v. Centrust Mortgage Corp.*, 51 F.3d 1027, 1030 (11th Cir. 1995) ("It is axiomatic that a constructive trust is inappropriate relief for the mere failure to pay a debt."). Even under Florida law, "[b]efore a court may fasten a constructive trust on a defendant's property it must find particular property upon which attachment by trust can fairly be obtained." *Finkelstein v. Se. Bank, N.A.*, 490 So. 2d 976, 983 (Fla. 3d DCA 1986).

In this case, as discussed *supra*, Noble has not asserted any theory of constructive trust in its Petition, and cannot point to any such property. Accordingly, Noble has not shown that it will be irreparably harmed, or that there is no adequate remedy at law. *See Rosen*, 21 F.3d at 1531 ("The test of the inadequacy of a remedy at law is whether a judgment could be obtained, not whether, once obtained it will be collectible.").

## III. THE DISTRICT COURT ERRED IN NOT ABSTAINING FROM EXERCISING JURISDICTION OVER FUNDS HELD UNDER THE CONTROL AND SUPERVISION OF THE DENVER PROBATE COURT.

### A. The District Court's exercise of jurisdiction is in conflict with the Denver Probate Court's ongoing jurisdiction over Conservatorship assets.

The District Court erred as a matter of law in declining to abstain in this matter and, instead, exercising jurisdiction over funds already held under the control and supervision of the Denver Probate Court.  This Court reviews legal

33

conclusions underlying a preliminary injunction de novo.  *See Fed. Trade Comm'n v. On Point Capital Partners LLC*, 17 F.4th 1066, 1077-78 (11th Cir. 2021).

### 1.  Legal Standard

The doctrine of abstention under *Younger v. Harris*, 401 U.S. 37 (1971), as expanded in *Juidice v. Vail*, 430 U.S. 327 (1977), has particular application to the present case.  Under this doctrine, federal courts are prohibited "from interfering with or enjoining three 'exceptional' types of state proceedings: (1) criminal prosecutions; (2) civil proceedings that are akin to a criminal prosecution; and (3) 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions.'"  *Barone v. Wells Fargo Bank, N.A.*, 709 Fed. Appx. 943, 948 (11th Cir. 2017) (*quoting Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

"If the court finds that one of these exceptional circumstances is present, there are 'additional factors' to be considered."  *Id.*  "These include circumstances in which there is (1) an ongoing state judicial proceeding that (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges."  *Id.*  (citing *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)).

Appellants argue that the third *Younger* category applies here—that federal courts must refrain "from interfering with pending 'civil proceedings involving

certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (quoting *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989)) (citing *Juidice*, 430 U.S. at 336 n.12).  Civil contempt orders and orders requiring the posting of bonds on appeal fall into this category.  *See Juidice*, 430 U.S. at 336 n.12 (civil contempt order); *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 13 (1987) (requirement for the posting of bond pending appeal).[16]

Likewise, "the law of probate, trusts, and estates—allocating the personal property of citizens—remains an important interest of the states for *Younger* purposes."  *Harper v. Pub. Serv. Com'n of W.VA.*, 396 F.3d 348, 352–53 (4th Cir. 2005).  Courts in this Circuit have accordingly applied *Younger* abstention based on ongoing probate and guardianship proceedings.  *See, e.g.*, *Carter v. Dep't of Children & Families*, No. 21-13128, 2022 WL 2921310, at *1 (11th Cir. July 26, 2022) (applying *Younger* to claims for money damages and injunctive relief based on ongoing guardianship proceedings); *Williams v. Adkinson*, 792 F. Supp. 755, 766 (M.D. Ala. 1992), aff'd, 987 F.2d 774 (11th Cir. 1993) (*Younger* abstention

---

[16] *See also Dandar v. Church of Scientology Flag Serv. Org., Inc.*, 619 Fed. Appx. 945, 948 (11th Cir. 2015) (applying this category to orders concerning enforcement of a settlement agreement).

barred heir's claims for injunction against further state-court proceedings to distribute proceeds from estate to anyone but heir).[17]

### 2. The Petition falls within the *Younger* abstention doctrine.

By virtue of the TRO and the relief requested in the Petition, Noble is seeking federal equitable intervention into state guardianship proceedings, asking this Court to ignore "proper respect for state functions." *Juidice,* 430 U.S. at 334. This falls well within the third *Younger* category—abstention in the face of "pending 'civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 78 (citation omitted).

The Denver Probate Court has original and exclusive jurisdiction to administer and distribute estates of wards and absentees, such as the Conservatorship Estate. Colo. Rev. Stat. § 13-9-103(1)(a) (2016). This jurisdiction has been broadly construed. *See Black v. Black*, 422 P.3d 592, 605-606 (Colo. App. 2018). The Denver Probate Court thus has jurisdiction to determine "every legal and equitable question arising in connection with" a ward's

---

[17] *See also Cafaro v. Pasco Prob. Circuit Court*, 8:11-CV-111-T-33TGW, 2011 WL 722975, at \*1 (M.D. Fla. Feb. 7, 2011), *report and recommendation adopted*, No. 8:11-CV-111-T-33TGW, 2011 WL 719157 (M.D. Fla. Feb. 23, 2011) (*Younger* abstention applied to federal court claim challenging probate proceedings); *Jones v. Law*, 2:17CV109-WKW-TFM, 2017 WL 2347683, at \*2 (M.D. Ala. May 1, 2017), *report and recommendation adopted*, 2:17-CV-109-WKW, 2017 WL 2346841 (M.D. Ala. May 30, 2017) (applying *Younger* "to the extent Plaintiff seeks injunctive relief related to the ongoing probate proceedings").

estate, so far as the question concerns "any asserted obligation of the estate."  Colo. Rev. Stat. § 13-9-103(3).   The Conservator, like a trustee in bankruptcy or a receiver, holds the assets enjoined by the TRO "in custodia legis" pursuant to the Denver Probate Court's jurisdiction, and can do nothing with the assets except with the approval of the Denver Probate Court.  *See Red Carpet Corporation v. Miller*, 708 F. 2d 1576, 1579 (11th Cir. 1983); (ECF 20-1 at 4-5) (detailing the Denver Probate Court orders asserting jurisdiction).

Accordingly, the Conservatorship is not only ongoing, the Denver Probate Court's continuing exercise of jurisdiction over the enjoined assets runs directly contrary to the TRO and Noble's request for in rem jurisdiction over the assets. At issue here is the Denver Probate Court's very ability to perform its essential function of exerting control over Conservatorship assets, in line with its orders establishing such control.  Not only does the TRO interfere with this, it inherently undermines the very process by which the Denver Probate Court obtained control. *Younger* and the reasoning of *Juidice* therefore apply.

While *Younger* abstention is indeed reserved for very limited circumstances, this case presents such a circumstance.   Indeed, this Court recently applied *Younger* abstention in *Carter*, 2022 WL 2921310, at *1, for similar reasons. There, a parent was attempting to assert claims for money damages and injunctive relief stemming from ongoing state guardianship proceedings.  This Court held that

abstention was appropriate, noting also that "[f]amily relations are a traditional area of state concern." *Id.* at *2 (citing *Moore v. Sims*, 442 U.S. 415, 435, 99 S. Ct. 2371, 2383 (1979); *31 Foster Children v. Bush*, 329 F.3d 1255, 1272 (11th Cir. 2003). Here, similar to *Carter*, Noble is seeking to interrupt the orderly administration of the Conservatorship Estate, a matter of state concern.

*Williams*, 792 F. Supp. at 766, which decision was affirmed by this Court, 987 F.2d 774, is also instructive. There, this Court affirmed that *Younger* abstention applied to a barred heir's federal court claims for an injunction against further state court proceedings to distribute proceeds from estate to anyone but the heir. The court there noted that "federal courts have long recognized an important state interest in the 'orderly and just distribution of a decedent's property at death.'" *Id.* (quoting *Reed v. Campbell*, 476 U.S. 852, 855 (1986)). Here, Horn may still be alive, but the "orderly and just" administration of the Conservatorship Estate is likewise a matter of state judicial function.

This is not to say, however, that all probate or guardianship matters are automatically subject to abstention. Rather, the competing federal claim generally must hinder the state court's very ability to perform its particular judicial function. For example, the Second Circuit recently declined to apply *Younger* abstention in a federal action filed after a probate court issued an order recognizing the validity of a state lien and a party's standing to participate in an estate administration.

*Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). The Second Circuit held that this order neither "'lies at the core of the administration of a State's judicial system,' nor implicates a process that aids the state court's core ability to function or force the parties to comply with its order. To the contrary, the probate court's order merely affects how the executor administers the estate." *Id.* (citation omitted) (quoting *Juidice*, 430 U.S. at 335).

Here, by contrast, the Denver Probate Court's ability to distribute and exercise jurisdiction over assets is its core function. This action is not akin to an order recognizing standing to participate in estate proceedings, as in *Cavanaugh*. Rather, Noble is specifically seeking to strip the Denver Probate Court of the authority to distribute certain assets. This goes to the very core of the Denver Probate Court's ability to function.

### 3. The *Middlesex* Factors Support Abstention.

For similar reasons, all three *Middlesex* factors (which are required for application of *Younger*) also support abstention here. *See Barone*, 709 Fed. Appx. at 948 (citing *Middlesex*, 457 U.S. at 423).

First, as mentioned above, the Conservatorship is ongoing and continues to exert jurisdiction and control over the assets. The exercise of federal in rem jurisdiction over those assets clearly interferes with this.

Second, federal courts have long recognized an important state interest in the orderly and just distribution of probate assets. *Williams*, 792 F. Supp. at 766 (citing *Reed v. Campbell*, 476 U.S. 852, 855 (1986)). The same is true of guardianships. *See Carter*, 2022 WL 2921310, at *1.

Third, and most significantly, even Noble acknowledges that it is able to raise its claim to these funds before the Denver Probate Court, but has chosen to litigate in the Southern District of Florida because it believes the Denver Probate Court bears it animus. (*See* Tr. at 13.) From a practical standpoint, no reason exists to litigate in the Southern District of Florida, and then go to Denver to collect on the only known assets of Horn which remain under the auspices of the Denver Probate Court.

The District Court did not consider any of the *Younger* or *Middlesex* factors here, or even rule on this issue in the TRO.  (ECF 45); (*see also* Tr. at 39) (declining to hear any further argument on the Denver Probate Court's jurisdiction).  The TRO does not even mention the issue once, yet it enjoined the Conservator (and, necessarily, the Denver Probate Court) from touching these funds. For the foregoing reasons, this was error.

**B. The District Court's exercise of jurisdiction conflicts with the Denver Probate Court's in rem control and supervision of the Conservator Estate assets.**

The District Court also should have exercised abstention based on the doctrine of prior exclusive jurisdiction.[18] *See Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939). Under this doctrine, "if the two suits are in rem, or quasi in rem, so that the court, or its officer, has possession or must have control of the property which is the subject of the litigation in order to proceed with the cause and grant the relief sought the jurisdiction of the one court must yield to that of the other." *Id.* In other words, "[t]he first court to assume control of the res" exercises exclusive jurisdiction. *Regions Bank v. Am. Leisure Resorts, Inc.*, No. 13-20638-CIV, 2013 WL 12164644, at *2 (S.D. Fla. June 28, 2013). The

---

[18] Appellants acknowledge that while they extensively raised the Denver Probate Court's in rem jurisdiction as a bar to Noble's claims in their briefing below, (ECF 21 at 5-8), they did not specifically raise *Princess Lida*. Appellants believe they sufficiently preserved the question of abstention based on the Denver Probate Court's in rem jurisdiction. Regardless, insofar as this presents an issue of subject matter jurisdiction, it may be raised even for the first time on appeal. *See United States v. George*, 697 Fed. Appx. 654, 655 (11th Cir. 2017) ("We review de novo the district court's subject-matter jurisdiction, even when raised for the first time on appeal."). Alternatively, to the extent this Court disagrees that this presents an issue of subject matter jurisdiction or declines to reach this issue, Appellants ask that the Court do so without prejudice to their ability to raise this issue before the District Court pursuant to Federal Rule of Civil Procedure 12(h). *See Mt. Hawley Ins. Co. v. JP Roosevelt, LLC*, 20-20186-CIV, 2020 WL 6134269, at *4 (S.D. Fla. Apr. 9, 2020) (noting that whether abstention under *Princess Lida* "should be raised under Rule 12(b)(1) or 12(b)(6) is the subject of some dispute"); *see also Selton v. U.S. Bank Tr. Nat'l Ass'n*, 124 F. Supp. 3d 1245, 1250 n.6 (M.D. Fla. 2015) (noting "the Eleventh Circuit does not appear to have addressed the issue, and its sister circuits have intentionally evaded it").

application of this rule is "virtually mechanical," not discretionary. *PPG Indus., Inc. v. Cont'l Oil Co*., 478 F.2d 674, 677 (5th Cir. 1973).

Here, the Denver Probate Court has already exercised in rem jurisdiction over the assets at issue, well before Noble filed the Petition.  Now the District Court has decided to do the same, ignoring the Denver Probate Court's authority over these assets.  (*See* ECF 1 ¶ 20) ("This Court also has in rem jurisdiction to prevent the dissipation, transfer, use, and/or encumbering of the funds being held by GLG, located in the State of Florida.").  Accordingly, the District Court should have abstained on the basis of the Denver Probate Court's exercise of in rem jurisdiction over the subject assets.

The importance of abstention here is also underlined by the probate exception to federal jurisdiction. *See Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006) ("[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court.").  While that exception has been generally applied in diversity jurisdiction cases, it has been applied in non-diversity cases as well. *See id.* (applying probate exception in case where federal jurisdiction was "premised on 28 U.S.C. § 1334, the statute vesting in federal district courts jurisdiction in bankruptcy cases and related proceedings).  In this case, premised on statutory

jurisdiction under the New York Convention, the probate exception also undermines the District Court's exercise of jurisdiction.

### C. This Court may determine its own jurisdiction, but should abstain from determining the jurisdiction of the Denver Probate Court.

Both the *Younger* and *Princess Lida* doctrines belie a larger issue here: the Petition necessarily asks the District Court to rule on the Denver Probate Court's jurisdiction. The private Panel in Hong Kong was not required to consider, as must this Court, that "federal and state courts are complementary systems for administering justice in our Nation. Cooperation and comity, not competition and conflict, are essential to the federal design." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586-587 (1999).

The Panel hinged its ruling on its perceived lack of jurisdiction of the Denver Probate Court to appoint Galle as Conservator to protect Horn's assets. (*See* ECF 1-1 at 65.) Based on this finding, the Panel excluded the Conservator from appearing on Horn's behalf and made a default ruling. *Id.*

The Panel's refusal to acknowledge the Denver Probate Court's jurisdiction was not only inappropriate, it created a "Catch 22" which made representing Horn impossible. Under the Panel's rationale, since Horn possessed no assets in Hong Kong (or anywhere except Denver, under the authority of the Denver Probate Court) no court could ever appoint, and no guardian could ever accept, an appointment to defend the only "asset" identified by the Panel in Hong Kong –

defense of a "chose in action." (ECF 1-1 at 48.)  Even if this were possible, the Conservator could not be appointed by two different courts and risk conflicting orders by each courts—one holding funds in custodia legis (the Denver Probate Court) and one with no assets.[19]

The Panel's unprecedented attack on the jurisdiction of the Denver Probate Court denied all due process to Mr. Horn and opened the Final Award to challenges under the New York Convention.  The District Court, however, declined to recognize this issue and accept the proper authority of the Denver Probate Court, on its own jurisdiction, to protect Horn's assets and appoint Galle as Conservator.  Instead, it entered a preliminary injunction and exerted jurisdiction over assets already in the Denver Probate Court's custody and control.  The lack of sensitivity to the legitimate interests and jurisdiction of the Denver Probate Court requires, at a minimum, that the TRO be reversed.

## IV. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN GRANTING NOBLE PRELIMINARY INJUNCTIVE RELIEF AGAINST PARTIES OVER WHOM THE COURT HAD NO JURISDICTION TO ORDER SUCH RELIEF.

### A. *The District Court granted preliminary injunctive relief against GLG without any factual basis.*

Initially, the District Court entered an Order dismissing GLG from the case after accepting GLG's arguments that it was not subject to the lawsuit due to a lack

---

[19] When the Panel was asked by Noble what jurisdiction should appoint a representative to defend the Ward, the Panel refused to answer. (ECF 1-1 at 53.)

of subject matter jurisdiction, as GLG did not sign any agreement to arbitrate.[20] However, after dismissing GLG, the District Court then entered the TRO against GLG, holding "Galle/GLG shall not dissipate, transfer, send, sequester, or delete, or cause or permit the dissipation, transfer, sending, sequestration, or depletion of, the sum of US $10,000,000 from amount remaining of the payment in respect of Horn's AVI." (ECF 45 at 5.) In so holding, the District Court made clear errors of fact and erred as a matter of law.

Factual findings in granting a preliminary injunction are reviewed for clear error. *ADT LLC v. NorthStar Alarm Services, LLC*, 853 F.3d 1348, 1351 (11th Cir. 2017). The TRO found that "[t]he funds representing Horn's AVI are in an account, or accounts, maintained by GLG and/or Galle" and that during the hearing on September 17, 2021, "Galle and/or GLG indicated that the amount of Horn's AVI remaining in the account, or accounts maintained by Galle and/or GLG is about US$30,000,000." (ECF 45 at 4.) The record contains no evidence that the funds from Horn's AVI are held in accounts maintained by GLG, or by Galle, individually. Rather, the record shows that Galle attested that the funds from Horn's AVI were held in conservator accounts under the Denver Probate Court's

---

[20] ECF 44 at 10–12. ("Respondents argue that the Court lacks subject matter jurisdiction . . . because neither Galle nor GLG were signatories to the agreement to arbitrate . . . Galle also argues that GLG should not be subject to Petitioner's enforcement action because it was neither present at the arbitration nor was an award entered against GLG. The Court agrees . . . Respondents' Motion to Dismiss is granted as to Galle Law Group")

control – not by GLG or Galle, individually.  (ECF 21 at 8.)  Noble offered no evidence supporting its initial claim that the funds from Horn's AVI were in any GLG account. Noble ultimately argued that the funds were held in an account maintained by Galle.  (ECF 25 at 7.) ("Noble submits that . . . the funds are in a Florida account maintained by Wellington-based Galle.")  At the hearing, in response to a direct question from the District Court, Appellants confirmed the funds were being held in the Conservatorship account—not in any account maintained by GLG or Galle, individually:

> MR. MCCANN: . . . [A]nd this is a key fact -- the payment was never made to the Galle, P.A. trust account because the Denver probate court assumed jurisdiction of the proceeds of the settlement . . . .

(Tr. at 23.)

> THE COURT: . . . Mr. McCann, I do have a question, sir. You mentioned the funds were never, I guess, assigned to the trust account. Where are the funds?

> MR. MCCANN: The funds are in the conservatorship account.

> . . . .

> THE COURT: Who is the conservator for that account?

> MR. MCCANN: Mr. Galle.

> THE COURT: Mr. Galle is conservator of that account; he has authority over that, correct, to disburse them?

> MR. MCCANN: Subject to the approval of the Denver probate court, yes.  The Denver probate court has approved all of the expenditures that have been made by the conservator.

(Tr. at 26.)  There was no evidence before the District Court that would permit its finding that the subject funds were in the possession of GLG or Galle individually, and such factual finding was clear error.  Likewise, the TRO enjoining GLG and Galle, individually, was erroneous.

> **B. The District Court granted preliminary injunctive relief based on a finding of subject matter jurisdiction as to Galle, individually, despite (1) Galle's lack of an agreement to arbitrate with Noble, and (2) his participation only as Conservator in the underlying arbitration.**

The District Court erred as a matter of law in finding that Galle could be subject to any preliminary injunction, because the District Court lacked subject matter jurisdiction over the dispute as to Galle.  Prior to entering the TRO, the District Court erroneously held in the Dismissal Order that the Court had subject matter jurisdiction over Galle.  This was an error of law that formed the basis upon which the preliminary injunction was granted against Galle.  Rulings on subject matter jurisdiction are reviewed *de novo*.  *Czarina, L.L.C. v. W.F. Poe Syndicate*, 358 F.3d 1286, 1290  (11th Cir. 2004); *MacGinnitie v. Hobbs Group, LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005).

The sole basis for subject matter jurisdiction asserted to the District Court was pursuant to the New York Convention.  (ECF 1 at 3-4)  In the Eleventh Circuit, absent a signed agreement to arbitrate, a Court lacks jurisdiction to

entertain an action under the New York Convention. *Czarina, L.L.C.*, 358 F.3d at 1292. In *Czarina,* the Eleventh Circuit concluded that the district court did not have subject matter jurisdiction over a dispute under the New York Convention because there was no arbitration agreement in writing between the parties, despite the defendant's participation in the arbitration. *Id*. at 1292–1293.

There was no evidence in the record that Galle ever signed an arbitration agreement. The District Court's Dismissal Order acknowledged that "Galle is not a party to a written agreement [to arbitrate]." (ECF 44 at 11.) Despite acknowledging the precedent of *Czarina* that requires a written agreement to arbitrate as a prerequisite for subject matter jurisdiction, the District Court held that the absence of a written agreement was not fatal because "the issue turns on the parties' consent" and Galle's attempt to participate in the arbitration "albeit in his capacity as Conservator for Horn" permitted the District Court to have subject matter jurisdiction over enforcement of the awards.

However, this holding of the District Court was not in conformance with *Czarina* and *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1171 (11th Cir. 2004), both of which held that a party's participation in an arbitration over their objection does not waive the agreement-in-writing requirement for subject matter jurisdiction. 358 F.3d at 1294. This Court has elucidated the reason for declining to find such a waiver based on participation:

> We agree with [the defendant] that it is not precluded from challenging the panel's decision merely because it participated in the arbitral proceeding. If we adopted the district court's position, a party facing arbitration would be in an untenable position. On the one hand, it could refuse to participate in the arbitral proceeding altogether to preserve its ability to challenge any adverse ruling in court; by doing so, however, the party would effectively forfeit any ability to present the merits of its case to the arbitrators. On the other hand, if the party were to participate in the proceeding, it would lose any ability to challenge the arbitrator's ruling. Nothing in the Convention suggests that parties must make such a choice, and we can find no case that supports this preclusive rule.

*Four Seasons Hotels & Resorts, B.V.*, 377 F.3d at 1171.

Indeed, the Supreme Court has recently weighed in on this issue. In *Viking River Cruises, Inc. v. Moriana*, No. 20-1573, 142 S.Ct. 1906 (2022), the Supreme Court again emphasized that arbitration is a matter of consent and "parties cannot be coerced into arbitrating a claim, issue or dispute 'absent an affirmative 'contractual basis for concluding that the party *agreed* to do so.'"" *Id*. Moreover, the Supreme Court noted that "single-agent, single principal representative suits are [not] inconsistent [with] the norm of bilateral arbitration" and gave the example of suits on behalf of incompetent persons. *Id*. In doing so, the Supreme Court noted "single-principal, single-agent representative actions . . . involve the rights of only the absent real party in interest." *Id*.

Galle was willing to appear in the Hong Kong arbitration as Conservator to defend the incompetent principal (Horn) based on Horn's consent to arbitration. Noble (and the arbitration panel) refused to allow him to do so. Galle,

49

individually, had no contract to arbitrate with Noble and strenuously objected throughout arbitration to participating or arbitrating any issues other than in a representative capacity for Horn.  There remains a lack of **any** precedent for an arbitration award against an agent individually in such circumstances.  *See id.*; *see also Lo v. Aetna Intern., Inc.*, No. 3:99CV195 JBA, 2000 WL 565465, at *4 (D. Conn. Mar. 29, 2000) (consent to arbitrate in a representative capacity cannot be imputed to consent to arbitrate in an individual capacity); *Sarhank Group v. Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("Oracle objected repeatedly to its being a party to the arbitration, thus preventing a finding that it waived its ability to object."); *Johnson v. Pires*, 968 So. 2d 700, 702 (Fla. 4th DCA 2007) (agent who agreed to arbitrate for disclosed principal could not be forced to arbitrate claims against him individually over his objection).

Accordingly, while the District Court found that Galle voluntarily participated as Horn's representative, it erroneously concluded that was the end of the inquiry.  Indeed, the record was replete with evidence that Galle vehemently objected to participating in the arbitration as to claims against him. (ECF 20-1, p. 10, ¶ 49; ECF 20-1, p. 91-92 ("Craig Galle cannot be personally liable for costs and expenses incurred by Noble Prestige in this arbitration as he is (i) <u>not</u> a signatory to the Loan Agreement containing the agreement to arbitrate… (iii) <u>not</u> a named-Respondent in this arbitration, (iv) <u>not</u> subject to the jurisdiction of this

Tribunal; and (v) was appointed to defend Horn by a United States Court…")  The Costs Award itself has no fewer than five references to Galle's objections to the jurisdiction of the panel to decide the dispute.[21]

Thus, the District Court erroneously failed to acknowledge the binding precedent of *Czarina* and *Four Seasons* in holding that it had subject matter jurisdiction over Galle in the absence of a signed agreement-in-writing.

Moreover, the District Court erred as a matter of law in improperly shifting the burden to Galle to prove the lack of subject matter jurisdiction, acknowledging that Galle appeared only in a representative capacity but stating that "Galle does not cite to authority which stands for the proposition that a representative may not be subject to the adverse arbitration awards entered against him."  (ECF 44 at 11). As noted in *Czarina*, the burden of establishing the jurisdictional prerequisites rests on the proponent of the award.  *Czarina, L.L.C.*, 358 F.3d at 1292  n.2.  This legal

---

[21] ECF 1-1 at 73, ¶ 33 ("Galle's Cost Submissions were filed without prejudice to Galle's … right to challenge the jurisdiction of the Tribunal"); ECF 1-1 at 73, ¶ 38-40 ("Galle queries how the Tribunal can have jurisdiction over Galle … to enter any award against [him] personally" and . . . [submits] that the Tribunal has no jurisdiction"); ECF 1-1 at 75, ¶ 49 ("Galle submits that neither he nor BCC can be held personally liable . . . in this arbitration because they are: (a) not signatories to the Loan Agreement containing the agreement to arbitrate before this Tribunal; (b) not signatories to the Loan Agreement containing the agreement to pay costs and expenses; (c) not named-respondents in this arbitration; (d) not subject to the jurisdiction of this Tribunal…"); ECF 1-1 at 75, ¶ 49 ("Galle also claims he was never served with the arbitration proceedings in his individual capacity"); ECF 1-1 at 76, ¶ 51 ("Galle contends. . . neither [Galle] nor BCC can be personally liable for any costs or expenses under an arbitration agreement to which they are not parties").

error resulted in the burden being placed on Galle – not Noble, as it should have been – to prove subject matter jurisdiction. Noble failed to cite any authority where a participant who consented to arbitrate solely in a representative capacity could be subject to an arbitration award entered against him individually. Indeed, cases on this precise issue hold that an agreement to arbitrate in an individual capacity cannot be implied from an agreement to arbitrate in a representative capacity. *See Lo*, 32000 WL 565465, at *4; *Johnson*, 968 So. 2d at 702.

Because there was a lack of subject matter jurisdiction over Galle, the District Court had no authority to enter the preliminary injunction against him. *Burr & Forman v. Blair*, 470 F.3d 1019, 1035 (11th Cir. 2006). ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle,* 7 Wall. 506, 74 U.S. 506, 514, 19 L.Ed. 264 (1868)).

## <u>CONCLUSION</u>

For all of the foregoing reasons, Appellants respectfully request that the Court reverse both orders and remand for dismissal of Noble's (1) claims seeking a temporary restraining order or preliminary injunction, and (2) all claims against Galle individually.

Dated: __August 10, 2022_                    Respectfully submitted,

                                             /s/ *Christine B. Gardner*
                                             JAMES M. MCCANN (182545)
                                             CHRISTINE B. GARDNER (109903)
                                             **AKERMAN LLP**
                                             777 S. Flagler Street, 1100 West Tower
                                             West Palm Beach, Florida 33401
                                             Telephone:  (561) 653-5000
                                             jim.mccann@akerman.com
                                             christine.gardner@akerman.com

                                             *Attorneys for Respondents/Appellants*
                                             *Craig Thomas Galle, Individually and*
                                             *as Conservator for Paul Horn, and*
                                             *The Galle Law Group, P.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

I certify that this brief complies with the type-volume limitation set forth in Fed. R. App. P. 32(a)(7)(B).  This brief contains 12,629 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).  It has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

/s/ *Christine B. Gardner*
CHRISTINE B. GARDNER

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on August 10, 2022, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all parties in this case whom are registered through the CM/ECF.

/s/ *Christine B. Gardner*
CHRISTINE B. GARDNER

65696115;2